-60743IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                    )
                                          )
WILLIAM EDWARD DUFVA and                  )    Case No. 07-60743
CAROLYN MARION DUFVA,                     )
                                          )
                 Debtors.                 )

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTIONS

Debtors William and Carolyn Dufva have claimed exemptions under Nevada's
exemption laws.  The Chapter 7 Trustee objects.  This is a core proceeding under 28 U.S.C.
§ 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b),
157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of
Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable
to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtors filed their Chapter 7 bankruptcy petition on May 30, 2007, in the
Western District of Missouri, claiming Nevada exemptions on their schedules.  Most notably,
they claimed an exemption in $46,253.00 in equity in their home in Springfield, Missouri,
pursuant to § 21.090.1(*l*) of the Nevada Revised Statutes.  The Trustee objects to the Nevada
exemptions, asserting that Missouri's exemptions should apply.   Missouri's homestead
exemption is limited to $15,000.[1]

The Bankruptcy Code allows debtors to exempt certain property from the estate as
enumerated in § 522(d), unless the debtor's state of domicile as prescribed by § 522(b)(3)(A)

---

[1] Mo. Rev. Stat. Ann. § 513.475.

has opted out of the federal exemptions.[2]  As amended by the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005 (BAPCPA), § 522(b)(3)(A) states, in part, that debtors

may claim exemptions in:

> any property that is exempt under Federal law, . . . or State or local law that is
> applicable on the date of filing of the petition at the place in which the debtor's
> domicile has been located for the 730 days immediately preceding the date of
> the filing of the petition or if the debtor's domicile has not been located at a
> single State for such 730-day period, the place in which the debtor's domicile
> was located for the 180 days immediately preceding the 730-day period or for
> a longer portion of such 180-day period than in any other place.[3]

Under this provision, if the Debtors were "domiciled" in Missouri for the entire 730-day

period immediately preceding May 30, 2007 (the date on which they filed their petition), then

Missouri exemptions apply.  If they were "domiciled" anywhere else for part of that 730-day

period, then they must claim the exemptions of the state in which they were domiciled for

the longer portion of the 180 day-period prior to the 730-day period, which, the parties agree,

is Nevada.

At the hearing on the Trustee's Objection, the parties' attorneys agreed that the

Debtors moved from Nevada to Missouri, arriving in Missouri on May 30, 2005, and that that

is the date on which the Debtors became "domiciled" in Missouri.  Based on the

representations of counsel at the hearing, the Court agrees.  Specifically, counsel advised the

Court that the Debtors testified at their § 341 meeting that they left their home in Las Vegas,

---

[2]  11 U.S.C. § 522(b)(1)-(3).  Missouri has opted out of the federal exemption scheme found in § 522. *See* Mo. Rev. Stat. Ann. § 513.427.

[3]  11 U.S.C. § 522(b)(3)(A).

Nevada on May 28, 2005. They arrived in Amarillo, Texas, on May 29th and spent the night there. They then drove from Amarillo to Springfield, Missouri, and arrived sometime late in the evening on May 30. They stayed that night in a hotel in Springfield. The closing on the purchase of their home in Springfield occurred the following day, and they moved into the house on the date of closing.

"Domicile for purposes of § 522 is determined under federal common law."[4] "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."[5] "[O]ne can reside in one place but be domiciled in another."[6] "A person can have but one domicile, which when once established, continues until he renounces it and takes up another."[7] A change in domicile requires the concurrence of two elements: (1) physical presence at the new location; and (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere.[8] "The Eighth Circuit has explained that in order for a person to have the requisite intent to change domicile that person must intend to reside somewhere indefinitely with no present or fixed intent to

---

[4] *In re Fabert*, ___ B.R. ____, 2008 WL 104104 at *2 (Bankr. D. Kan. 2008) (citations omitted).

[5] *Mississippi Bank of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *In re Ring*, 144 B.R. 446, 449 (Bankr. E.D. Mo. 1992) (*citing Homes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981)); *In re Fabert*, 2008 WL 104104 at *2 n. 13.

[6] *Id.*; *In re Fabert*, 2008 WL 104104 at *2 n. 13.

[7] *In re Ring*, 144 B.R. at 449.

[8] *Id.* at 450 (citing *Holmes v. Sopuch*, 639 F.2d at 433).

3

move on upon the happening of a reasonably certain event."[9]  Although the Debtors stayed

in a hotel in Springfield on May 30, 2005, and did not move into their permanent residence

until the following day, they were, according to counsel, physically present in Missouri on

May 30, and intended to remain here indefinitely, with no intention to go elsewhere.[10]  They

were, therefore, domiciled in Missouri on May 30, 2005.

That being the case, the Debtors contend that their May 30, 2007 bankruptcy filing

is 729 days after they moved to Missouri and, therefore, they lived in Nevada for one day out

of the 730-day period.  Consequently, they assert, Nevada exemptions apply because that is

where they lived for the 180 days prior to the 730-day period.  The Trustee asserts that, even

excluding the filing date from the calculation, the Debtors lived in Missouri for the full 730-

day period and, therefore, Missouri exemptions apply.  Thus, the question here is how to

calculate the 730-day period.

The parties cited no case explaining how to calculate § 522(b)(3)(A)'s domiciliary

period, and the Court found none.  We start with the language of the statute, which requires

---

[9]  *Id.* at 450 (citing *Holmes v. Sopuch*, 639 F.2d at 434).

[10]  *See Katcher v. Wood*, 109 F.2d 751, 754 (8th Cir. 1940) (acknowledging that "a person may leave the state in which he has been domiciled and acquire a domicile in another state even though he establishes himself in temporary lodgings in a hotel and does not immediately settle in any particular building as a fixed place of abode," but holding that the particular recording statute in that case did not contemplate a situation where a person could be domiciled in the state without acquiring a domicile in any territorial subdivision thereof).  *See also Gambelli v. U.S.*, 904 F.Supp. 494, 497 (E.D. Va. 1995) (holding that a person may change his domicile "instantly by taking up residence in another state with the intent to remain there [and] [h]e need not intend to remain permanently at the new domicile; it is enough that he intends to make the new state his home and that he has no present intention of going elsewhere.") (*quoted by United Company v. Keenan*, 2006 WL 2994989 (W.D. Va. 2006) (slip copy)).

4

the Court to determine "the place in which the [D]ebtors' domicile has been located for the 730 days immediately preceding the date of the filing of the petition."  In construing other provisions in the Bankruptcy Code which look to periods before the commencement of a bankruptcy case, courts have disagreed on the issue of whether to count backward from the date of the petition, or to count forward from the date of the relevant prepetition event.  The majority view favors the approach of counting backward from the petition date,[11] and I agree. The day "immediately preceding" the date of filing in this case is May 29, 2007.  Counting backward from that date, the 730th day is May 30, 2005.[12]

I note that, in calculating the time period for obtaining prepetition credit counseling required under § 109(h), which refers to "the 180-day period preceding the date of the filing of the petition," some courts have interpreted that phrase to mean, in effect, the *point in time* that the action takes place, rather than the *day* that the action takes place, such that the

---

[11] *See In re Hays*, ___ B.R. ____, 2007 WL 1087730 (Bankr. N.D. Ohio April 5, 2007) (counting backward from the petition date for purposes of § 502(k)(1)(B)(i)); *Alexander v. Southern Mills, Inc. (In re Terry Manuf. Co.)*, 325 B.R. 638 (Bankr. M.D. Ala. 2005) (following the majority view of counting backward from the date of the petition for purposes of § 547(b)(4)(A)); *Levinson v. Security Savings Bank (In re Levinson)*, 128 B.R. 365 (Bankr. S.D. N.Y. 1991) (listing cases from both the majority and minority views for purposes of § 547(b)(4)(A)).

[12] Viewing May 29, 2007 as "Day 1" of the 730-day period, then May 28, 2007 would be "Day 2," and May 1, 2007 would be "Day 29."  There were 30 days in April 2007; 31 days in March 2007; 28 days in February 2007; and 31 days in January 2007, so January 1, 2007 would be "Day 149."  There were 365 days in 2006, so January 1, 2006, would be "Day 514."  There were 31 days in December 2005; 30 days in November 2005, 31 days in October 2005, 30 days in September 2005; 31 days in August 2005; 31 days in July 2005; and 30 days in June 2005. Therefore, June 1, 2005 would be "Day 728."  May 31, 2005 would be "Day 729"; and May 30, 2005, would be the 730th day immediately preceding the date of the filing of the petition.

period starts on the day *and hour* that the petition is filed.[13]  Hence, a debtor who obtains

credit counseling on the morning of the same day the petition is filed has complied with §

109(h)'s requirement that the credit counseling be obtained during "the 180-day period

preceding the date of filing of the petition."[14]

If one were to apply that interpretation to § 522(b)(3)(A) and the circumstances here,

then the Debtors' 730-day domiciliary period would begin at 3:54 p.m. on May 30, 2007

(which was the moment that the Debtors filed their bankruptcy petition), and would end at

3:54 on May 30, 2005.  Under that theory, since the Debtors arrived in Missouri late in the

evening on May 30, 2005, they would have been domiciled in Missouri for less than the full

730-day period.[15]

I express no opinion here as to the correctness of that interpretation as it applies to the

language of § 109(h).  However, assuming that such interpretation is correct as to the

language of that provision, I find that the language of § 522(b)(3)(A), which differs slightly

---

[13]  *See, e.g.*, *In re Warren*, 339 B.R. 475, 479-80 (Bankr. E.D. Ark 2006) (holding that
"date of filing" as used in § 109(h) means "the specific day, month, year, and time of day the
petition was filed"); *In re Spears*, 355 B.R. 116 (Bankr. E.D. Wis. 2006); *In re Hudson*, 352 B.R.
391, 393-94 (Bankr. D. Md. 2006).  *Contra In re Francisco*, ___ B.R. ____, 2008 WL 244172
(Bankr. D. N.M. Jan. 25, 2008) (interpreting § 109(h) to mean that the period "preceding the date
of the filing of the petition" starts on the calendar day before the filing of the petition); *In re
Cole*, 347 B.R. 70 (Bankr. E.D. Tenn. 2006) (same).

[14]  *Id.*

[15]  Debtors' counsel submitted a computer-based duration calculation which assumed that
the Debtors arrived in Missouri at 11:59 p.m. on May 30, 2005, and filed their bankruptcy
petition at 3:54 p.m. on May 30, 2007.  This resulted in a calculation of 729 days, 15 hours, and
55 minutes.

from that of § 109(h), does not permit such an interpretation.    Again, § 109(h) refers to a *period* during which something could happen (*i.e.,* "during the 180-day period preceding the date of filing of the petition") which arguably lends itself to an interpretation where "date of the filing of the petition" could be interpreted to mean a particular moment in time when the period begins to run.  In contrast, the critical language in § 522(b)(3)(A) refers to "the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition."  The natural, ordinary reading of "days" in this phrase means calendar days, not 24-hour periods beginning at a particular moment on a particular day.  The phrase "date of the filing of the petition" must, therefore, mean the day on which the petition was filed,[16] such that we begin counting backward on the calendar day before the petition was filed.

Finally, at the hearing on the Trustee's Objection to the exemptions, the parties pointed to Rule 9006, which provides, in relevant part:

> In computing any period of time prescribed or allowed by these rules, or by the Federal Rules of Civil Procedure made applicable by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  As used in this rule . . . , "legal holiday" includes . . . Memorial Day . . . .[17]

---

[16]  I recognize that § 522(b)(3)(A) also later refers to "the 730-day period," but that is simply a reference back to the "730 days" language.

[17]  Fed. R. Bankr. P. 9006(a).

Assuming that this Rule applies to the calculation of § 522(b)(3)(A)'s 730-day domiciliary requirement at all, the above-described manner of calculation comports with Rule 9006(a) because it excludes the filing date, which is the day of the event from which the designated period of time begins to run, and includes the 730th day, which is the last day of the period. However, the last day of the 730-day period in this case is May 30, 2005, which was Memorial Day, a specifically-enumerated "legal holiday" under Rule 9006(a). If Rule 9006(a) were applicable here, one might argue that we then look to the previous Friday, May 27, 2005, as the critical day. The parties agree that the Debtors were not domiciled in Missouri on that day.

However, several courts have held that Rule 9006(a) does not apply to provisions of the Code such as § 522(b)(3)(A) which require backward counting, particularly as to the weekend and holiday aspect of the Rule,[18] and I agree. Hence, the Debtors' 730-day domiciliary period cannot be extended due to the 730th day falling on Memorial Day.

As stated above, counting backward from the day immediately preceding the date of filing in this case, the 730th day is May 30, 2005. The Debtors were domiciled in Missouri

---

[18] *See, e.g., Smith v. United States (In re Smith)*, 96 F.3d 800, 802-03 (6th Cir. 1996) (holding that Rule 9006(a) does not apply to § 523(a)(1)(B)(ii) in determining whether a tax return was filed "after two years before the date of the filing of the petition"); *In re Greene*, 223 F.3d 1064, 1069 (9th Cir. 2000) (holding that § 547(b)(4)(A) is not an applicable statute for purposes of Rule 9006(a) and therefore cannot be used to extend the 90-day preference period); *In re Hays*, 2007 WL 1087730 at *3 (holding that Rule 9006(a) does not apply to § 502(k)(1)(B)(i) in calculating whether a proposal had been "made at least 60 days before the date of the filing of the petition"). *But see In re Nelson Co.*, 959 F.2d 1260, 1266 (3rd Cir. 1992) (extending the 90-day preference period backward to the next working day if the 90th day falls on a weekend or holiday).

on that day.   Consequently, they were domiciled in Missouri for all 730 of the days immediately preceding the date of the filing of the petition, and Missouri exemptions therefore apply.   That being the case, I need not decide whether Nevada's exemption laws would have permitted the Debtors to claim the Nevada homestead in their bankruptcy case, even though they were not residents of Nevada at the time the exemption was claimed.

ACCORDINGLY, the Debtors are required to claim exemptions applicable under Missouri law.   Since the Debtors have claimed their exemptions under Nevada law, the Trustee's Objection to Exemptions is SUSTAINED.   Debtors are ORDERED to file an amended Schedule C, claiming applicable Missouri exemptions, within 20 days.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 5/13/2008

Attorney for movant to serve parties not receiving electronic notice

9